Good morning, Your Honors. If it pleases the Court, Paul Ward, representing Appellant Christopher Blanks. The State takes the position in this case that two Ninth Circuit opinions bland the Department of Corrections and Shelby-Wideck have essentially been nullified by the United States Anti-Terrorism and Effective Death Penalty Act, a provision that says that no habeas relief can be granted on issues on which the U.S. Supreme Court has not directly spoken, and that because the U.S. Supreme Court has not directly spoken on the question of whether a criminal defendant in a state case who asks for new counsel is entitled to an inquiry. I think, however, that that sort of misframes the issue. The issue is not whether a defendant is entitled to an inquiry per se, but the issue is whether a defendant is entitled to an arbitrary denial, to be free from an arbitrary denial of counsel when he requests one. And so it's the information that the Court gathers on which it makes its decision to grant or deny the request for counsel that is important. And whether it comes via an inquiry or whether it can be found directly from some other part of the record, I think, is immaterial. So that — He didn't ask for appointment of new counsel, did he? Pardon me? He did not ask for appointment of new counsel. He simply said, I'm getting private counsel. Yes. I think that's true, and I think that indicates that he wants a different attorney, and that's all I'm — Well, but that says nothing — nothing about anything being wrong with his current attorney. It just says, I want private counsel. Lots of people would rather have private counsel than appointed counsel. So all the Court's told is, I'm getting private — first he says, I've fired my attorney. The Court says, I don't think so. The Court's right. He can't fire his attorney. And he says, I'm getting private counsel. The Court said, fine, make sure he's here and ready to go. Well, it's essentially overnight. Excuse me? Essentially overnight, because that was a Friday — Friday before the trial was supposed to start on Monday. Well, in any event, it didn't start on Monday. And in the third event, private counsel never shows up. As a matter of fact, nothing said about it after that. He just said, I'm getting private counsel. He didn't say, this guy's a turkey. He didn't say, we've got a breakdown in communication. He didn't say anything. He just said, I'm getting private counsel. Well, he didn't say anything because the Court said, I don't think so. He's right. He can't fire counsel. He says, I'm fired by attorney. The Court says, I don't think so. And he's right. You can't fire counsel if you've got appointed counsel. Well, I think that — when he says, I've fired my attorney, I think that that is sort of more of a broad indication that he doesn't want his court-appointed attorney any longer. And he says, I'm in the process of hiring private counsel. Your problem is not only the U.S. Supreme Court, but even the Ninth Circuit cases aren't dealing, it seems to me, with that situation. They're not dealing with a situation where the person says, you know, I want a new appointed attorney. This guy is no good. I want a new appointed attorney. Even our cases don't deal with that, I think. Right. Right. But they touch essentially different aspects of requesting new counsel. Either I want a new appointed attorney or I want to replace my private attorney with appointed attorney. I believe that's the case in the Shelby White Act. Does time pose any — does who had the control of the time pose a problem in this case, in your opinion? In what respect? I don't know. I have no idea he's firing his attorney, even if he could have fired him, until he told him. And he told him. You say, well, this was Friday. That's going to be Monday. He told him on Friday. He told him earlier, he would have had more time. He told him — he might have waited until Monday morning and told him. I mean, he — the judge didn't know until he was told. Did he? No, the judge — it came as a surprise to me. So how can we see that there's some problem caused by anybody other than your client in this case? Well, the court does have to, I think, make some inquiry before he denies this. A person does have a qualified right to counsel of choice. Sure. And if he had come with his new counsel, this — that would be a different record. He didn't. And he never did. Did he? No, he never did. But as I said, the fact that the trial didn't start on Monday was just — I mean, his counsel got sick. And they — I assume they trailed this, like, day to day. And, you know, eventually it did — the trial did take place two weeks later after the attorney recovered. But I think that is totally irrelevant as to anything in this issue, because nobody on Friday could have foreseen that appointed counsel would be sick on Monday. No, but on Monday they knew. So only one day had passed before they knew. Right. On Monday they knew for sure that Mr. Blanks did not show up with new counsel and that trial counsel was ill. So that was one day, and then you had the rest of the two weeks. Yeah. But what is Mr. Blanks supposed to do on — Move for a continuance. Well, he's not back in court is the problem. You know, he doesn't have free access to court. He's incarcerated. He can ask for a continuance. He can say why he doesn't want his counsel. You say, what can he do? The options are not limitless, but they're numerous. Well, he does have — he does have some options, yes. But his trial counsel was sick. I don't know how much communication Mr. Blanks had from the jail to the public defender's office to say, please tell Mr. Waitman that I no longer want his services and I want him to ask for — for a continuance so that we can sort this out. When the trial is essentially being trailed probably day to day and the trial court has indicated that, no, there's no way I'm going to give you new counsel. The trial court really didn't say that, though. The trial court said, if you come with new counsel, we'll take it up then. If he shows up Monday morning ready for trial, we'll go. Right. But he didn't say, I'm not going to allow you to obtain new counsel. He just said, we're going to — I'm not going to grant a continuance, basically. I'm not going to extend it. Show up Monday morning, we'll take it from there. Yeah, and even that without inquiry, I think, is reason enough to — Well, perhaps, but what's in this record that indicated he could afford counsel? I mean, at the end of the day, isn't any error harmless because there's absolutely nothing that shows that he had a counsel he could have obtained? Unless you presume structural error. But assuming that, leaving that aside, which is pretty high, it's pretty tough for you to show that, I think. Why isn't any error harmless? Well, because we really don't know on the day of trial whether or not he could have afforded counsel. He made a facially valid request. He says, you know, essentially he says, I want to hire new counsel, and the court says, no, you can't do that unless he shows up here Monday morning. Well, the record actually shows that his girlfriend and others went out to raise money, and they couldn't raise enough. Well, that record was developed in the district court. And first of all, I don't think that that is a proper inquiry to be conducted in the district court. And I think the burden is on the people, or on the State of California, to prove that he could not hire counsel, given a reasonable opportunity. We know that his family seems to have raised about $2,000 intending to hire — Why would the burden be on California when the record shows affirmatively that he did not hire? Why does California have to go further than that? Why would California have to say, you didn't hire, and furthermore, you couldn't hire? He didn't hire, and isn't that enough? Well, for one thing, when the inquiry was — the evidentiary hearing was conducted in the district court, the district court said, we're only going to talk about events that occurred prior to that Friday when Mr. Blanks requested new counsel. We're going to exclude all other evidence. And then the district court ends up relying on evidence about what happened the days following the request for counsel. And I think Mr. Blanks has put it at definite disadvantage in that case, because he was told not to develop more information about what happened after that Friday. And then to have the court turn around and rely on information saying, well, over the next couple of weeks, nothing happened. The point of the inquiry is that on that Friday when he was denied his request for counsel, I believe that that's where all that we should look at. If you want to reserve your remaining time. Okay, thank you. Good morning, Your Honor. May it please the Court. I'm Kevin Viena, Deputy Attorney General for the State of California, representing Respondent. This is a case under the AEDPA. This Court has said that in order to prevail under the AEDPA, a petitioner must have a United States Supreme Court case. I still don't see one. How about Powell v. Alabama? Powell provides that a criminal defendant should have a reasonable opportunity to obtain counsel of his choice. And while I would say that we don't dispute that there is a qualified right to counsel of choice, we would say that nothing happened in this case that denied Mr. Blanks a reasonable opportunity to obtain counsel of his own choice. In fact, when we start – You first started by saying there's no United States Supreme Court case. I think we could concede that Powell v. Alabama gives defendants the right. It wants to afford a fair opportunity to secure counsel of their choice, right? Yes, Your Honor. So that's the premise we start with. It doesn't go beyond that. We say, now, why does Powell apply or not apply? We don't disagree that Powell grants him a qualified right to counsel of choice or a reasonable opportunity to obtain one. We would disagree that anything in Powell suggests that a state superior court has a duty to inquire more. When an individual says, I want to hire an attorney, that nothing in Powell says you have to ask more than, have you got one yet? And that's what happened in this case. And the facts in the state court are particularly important. As it turned out, the state court judge denied Mr. Blanks nothing. He never said – there never was an adverse ruling from which Mr. Blanks appeals. The trial court judge did encourage him to move with some dispatch, but that's not error. Right. Let's assume the facts were somewhat different. If on that Friday the judge had said, I'm not going to give you counsel of your choice, would we be in a different situation? Yes. We would be in a different situation, and we'd be in a situation that wasn't presented in the state courts, actually. If he had said, or if Mr. Waitman had followed on, if there was some real indication that he was going to be able to obtain counsel of choice and had said, I'll have my counsel here, or I have counsel, or simply had said, I would like to ask for a continuance in order to search for counsel, then we believe that under Unger v. Serafici, the Supreme Court's case, there would have been a requirement for deeper analysis. But in this case, what we had was the day before trial, and as the court can see, it was a complex trial. That is, there were a number of armed robberies that occurred. The day before trial, for the very first time, a defendant says, I want now to replace retained or appointed counsel with retained counsel. The trial court looks at that or should see that there's a fair chance of prejudice to the government and also disruption to the trial proceedings, which is a proper matter for consideration if there is, in fact, a request for a continuance. But that didn't happen. Instead, what the trial court had was a defendant asking on the eve of trial, or simply saying, I fired my attorney, and as has been noted, that's not correct. He could not fire his attorney. His attorney could be relieved only by the court. Not asking for a substitute appointed counsel, which probably would, well, which we believe would, even under California law, under Marsden, have triggered the court's requirement to inquire if there is a possibility for ineffective assistance of counsel. But instead, he's simply saying, I want to hire an attorney. And the court does have some information in that regard, because earlier the court had made a determination that he was indigent and qualified for appointed counsel. So in that context, there's little likelihood that he's going to be able to, or at least until he demonstrates it. So the trial court never denied him anything and did not discourage him from seeking counsel. And as we now know, Mr. Blanks was not discouraged from continuing to seek counsel. He was, his brother was writing a check 14 days later to Mr. Brooklier. So Mr. Blanks was not discouraged in any way from seeking counsel. Once again, a different question and a different inquiry had Mr. Brooklier shown up sometime and said, I'd like to substitute in. And then we believe that even under California law, there would have been an inquiry by the trial court about how long a delay Mr. Brooklier would have wanted, if any. But that's a hypothetical and a contingency that didn't arise. In this case, we believe the inquiry was adequate. There was no indication of ineffective assistance of counsel. There was an indication. Why isn't it enough when someone says they want to fire their lawyer that it should send up a red flag to provoke either a morrison inquiry or something else? It would seem to me that even on the eve of trial, and I'm sympathetic with the trial judges who see this all the time, but when somebody says I want to fire my lawyer and hire someone, why does the fact they want to hire someone else eliminate the requirement or the duty of the trial judge to inquire further? Two reasons in this case, one general and one specific. The general reason is this. A defendant may want to hire an attorney of his choice for any of a number of reasons, any reason at all. He may not have liked Mr. Waitman's appearance, may not have liked his accent. Any conceivable reason, and that is a matter that is really in general of no consequence and no concern to the state court. If he wants another attorney, he can try to get one, and the state shouldn't be interfering in his efforts there. But in this case, there's a specific instance that mitigates that concern as well, and that is Mr. Waitman was the attorney. He was present, and he demonstrated surprise that his client was seeking an attorney. Twice asked, have you hired one? Clearly was surprised, which is a fairly good indication that at least his lawyer didn't see there was a problem. And then Mr. Waitman followed. But they weren't communicating. Well, if. That's the other inference that we've drawn. If they weren't communicating, that's a difficulty. But Mr. Waitman went on, and he said to the court, and if my client wants to hire another attorney, and we believe implying and is able to hire another attorney, he should have that right. So what the court also could see is an engaged defense counsel who is concerned with his client's rights and who isn't trying to hold on to a client for whatever purpose, but who is concerned with and can reasonably be expected to enforce those rights or seek enforcement of the rights for his client. And that's what makes the record in this case different. And I would argue as well that that's what makes the inquiry different when we distinguish between the two subordinate rights under the Sixth Amendment, the right to effective assistance of counsel and the right to counsel of choice. California first in Marsden said if we're seeking to protect the right to effective assistance of counsel, we need the trial court to speak directly with a defendant in order to ensure that there isn't that sort of breakdown. This court, shortly after Marsden, in Brown, I think, said, followed Marsden essentially, or adopted an obvious and useful pragmatic rule. And although we'd say there's no Supreme Court case that establishes that either, it's an obvious, pragmatic, prophylactic rule to protect against ineffective assistance of counsel before you find out at the end of trial. But if the issue is not effective assistance of counsel, and we know now that that is not the issue, if the issue is to protect the right to counsel of choice, then a court can and should presume that competent counsel, as Mr. Waitman was in this case, will protect his client's interest in that regard and speak for his client, as Mr. Waitman did on one occasion. Unless there are further questions from the Court, that concludes the points that I hope to make an argument. Any questions? Thank you, Your Honor. Thank you, Your Honor. If we say that this case is governed by Powell v. Alabama, and Mr. Blank's had a constitutional right to reasonable opportunity to obtain counsel of his choice, then I think the question boils down to, is it a reasonable opportunity to obtain counsel from Friday to when the trial starts Monday morning? And I don't think that the... Do we have to look at who had control of that when we answer the question? Why did he only have from Friday till Monday? Because who controlled it? Well, the trial was scheduled for Monday morning. They were at a pretrial conference on Friday. He notified the court of a problem on Friday. So he had control. Well, Mr. Blank's is incarcerated. He doesn't have all that much control over... Well, he wasn't arrested on Thursday. No, he's been incarcerated for some time. We don't know what kind of communication he's been able to have with Mr. Waitman, how good that is. No, I'm not answering it. I'm asking you, do we consider that? No, I don't think you do. That was your position. It doesn't matter. Even if it had been Monday morning, it would have been all right. I mean, you have to have trial... You're new counsel ready to go Monday morning. When my trial is going to... Just before you sat down, you said, the court told him we're looking at things that happened till now, without looking beyond. And then he decided it based on what happened beyond. But he couldn't predict what was going to happen beyond, because he couldn't know on Friday that the man was going to be sick on Monday. So he couldn't talk about, but he's going to be sick on Monday, so we'll take that into consideration. He could only know that after the event. Correct. And when we read this, we can't throw common sense out. We've got to really kind of see why what happened happened, if the record affirmatively shows. And this record affirmatively shows. Well, this record really shows that he had to have counsel ready to go by Monday morning. Right. And I don't think that's a fair opportunity to obtain counsel and bring counsel up to speed so that when the trial begins, he has adequate representation. But given the fact he'd already been found indigent and qualified for public assistance, why should the trial court presume that he would be able to secure counsel of his choice, paid counsel of his choice? Well, I don't think the trial court needs to presume that. I think the trial court needs to make some inquiry and says, what have you done so far, who's paying for it, what's your current status with Mr. Waitman, your appointed counsel, are you getting along with him, what is he going to, is this. That's kind of a stretch from Powell though, isn't it? I mean, Powell doesn't go nearly that far, just says fair opportunity. Fair opportunity to obtain counsel of choice. And, you know, the court could decide that, well, all the months that he's been in prison, he's had an opportunity, there's nothing that's in California state law that says you can't hire counsel and then let us know that you've hired counsel and we'll be happy to replace your appointed counsel with your counsel. But the point, you know, on that Friday when he says, I want to replace my appointed counsel with retained counsel, some inquiry is required to find out why and what's going on and what would amount to a fair opportunity. Thank you, counsel. Our questions have taken you over time, but thank you very much. The case just heard will be submitted.
judges: Farris, Fernandez, Thomas